

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| RANDELLA L. DARBY,            §<br>         Plaintiff,            §<br>                                §<br>vs.                             §     Civil Action No. 3:23-1369-MGL<br>                                §<br>INTERTAPE POLYMER CORPORATION,  §<br>         Defendant.            § | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.      INTRODUCTION**

Plaintiff Randella L. Darby (Darby) brought this civil action against Defendant Intertape Polymer Corporation (IPC) in the Richland County Court of Common Pleas, alleging state law claims of negligence, strict liability, and "[e]motional [d]istress and [d]epression[,]" Amended Complaint at 8 (emphasis omitted).  IPC removed the matter to this Court, which has jurisdiction as per 28 U.S.C. § 1332.

Pending before the Court is IPC's motion for summary judgment.  Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court the motion will be granted.

## II.     FACTUAL AND PROCEDURAL HISTORY

This case arises from an injury Darby suffered while working as a packer at McEntire Produce's (McEntire) facility in Columbia, South Carolina. Darby claims the injury was caused by a defective carton-sealing machine manufactured and sold to McEntire by IPC.

Darby claims she "had no training on the machine . . . ." But, McEntire's business records indicate Darby signed a document on her first day of employment stating she read, received, and understood the safety training she received from IPC. Such training included the topic of "Lock Out Tag Out 101," which appears to be a tagline for employees disabling machinery or equipment for maintenance purposes. IPC's Motion at Ex. 4.

Additionally, Darby attended a second safety session covering emergency stops on the carton-sealing machine, which included the following topics: "Stop in case of emergency, [i.e.,] Employee reaching into moving machinery, Machinery is about to break potentially harming employees, Shutting down machinery to lock out and tag out." *Id.* at Ex. 3.

Nevertheless, shortly after the second training session, Darby reached into the carton-sealing machine to dislodge a box and was struck by the machine's handle, causing her to suffer a resulting forehead burn. A surveillance photograph confirms Darby reached into the machine rather than utilizing the machine's interlocking access doors, which are "specifically designed and intended for safely accessing the machine, and for clearing jammed boxes." *Id.* at Ex. 5; *see id.* at Ex. 3 (surveillance photograph).

Together, Darby's supervisor and shift manager promptly completed an incident investigation report. In relevant part, the report provides:

Why did the injury occur? Employee went into moving machinery.

What short terms steps need to be taken to prevent this from occurring again? Corrective action will be issued. Employee was [trained]. . . about entering moving machinery.

2

[Other workers] on that line are required to lift up the tape head and allow the box to move through.

*Id.* at Ex. 3. McEntire's log file for machine-related injuries similarly states "a box jammed while going through the tape machine . . . so [Darby] reached in to push it through. The white 'push handle' was stuck behind the flap of the box so when [Darby] pushed it free, the handle released, swinging back up and striking her in the head." *Id.* at Ex. 5.

Darby thereafter filed this action for compensatory and punitive damages in the Richland County Court of Common Pleas. As the Court noted above, IPC removed the matter and then subsequently filed this motion for summary judgment. Darby filed a response, and IPC replied. Having been fully briefed on the relevant issues, the Court will now adjudicate the motion.

**III. STANDARD OF REVIEW**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party has the burden of proving summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party makes this showing, the opposing party may not rest upon mere allegations or denials but rather must, by affidavits or other means permitted by Rule 56, set forth specific facts showing there is a genuine issue for trial. *Id.* at 323; *see also* Fed. R. Civ. P. 56.

A party asserting a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).  A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Thus, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (citing *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)).  "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987) (first citing *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); and then citing *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950)).  Accordingly, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV.     DISCUSSION AND ANALYSIS

### A.     *Whether the Court should grant summary judgment as to Darby's negligence and strict liability claims*

IPC avers the Court should grant summary judgment as to Darby's negligence and strict liability claims because she has neither established all the elements of a products liability cause of

action nor proffered evidence of an alternative, safer design. Darby neglects to offer any substantive response to this argument and instead relies on the allegations set forth in her amended complaint. Further, Darby states she failed to produce any expert opinion on the machine because "she was denied a response to investigate the original defective machine[.]" Darby's Response at 12. Then, citing a former coworker's "affidavit," Darby contends there is a genuine dispute of material fact as to whether the machine was defective. *Id.* at 6.

To establish a products liability cause of action, under both negligence and strict liability theories of recovery, a plaintiff must demonstrate: "(1) [s]he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant." *Jackson v. Bermuda Sands, Inc.*, 383 S.C. 11, 15, 677 S.E.2d 612, 615 (Ct. App. 2009). Additionally, the plaintiff must "provid[e] evidence of the existence of an alternative safer feasible design . . . ." *Cohen v. Winnebago Indus., Inc.*, 210 F.3d 360, 360 (4th Cir. 2000).

Here, Darby fails to cite any evidence in support of her negligence and strict liability claims and instead relies solely on an "affidavit" from her alleged coworker, Kamaka N.P. Aweau (Aweau). The purported affidavit, however, is an unsworn email. It states:

> I am writing this letter on behalf of . . . Darby for the accident that happened in McEntire Produce.
>
> [Darby] was working on line twelve and was taken off of that line that day and placed on line eleven to make sure that the [carton-sealing] machine ran smoothly.
>
> Not knowing what do on that machine besides of what was told to her, "she did what she was told[.]" This [carton-sealing] machine folds and seals boxes and sends them on a roller to me[,] but it gets backed up all the time which is why they kept someone there at all times.
>
> As for the previous worker who was there before [Darby] . . . I don't know what happened to her. However, they put [Darby] in her place[,] and [she] was told to

> make sure the flaps on the boxes were down and fed through the machine and on to the rollers to me.
>
> [Darby] had no training on how to make the machine stop and go [in case] of emergencies.
>
> Line eleven had a new bagging machine that was put in not to[o] long ago before [Darby] was put on the [carton-sealing] machine[,] and it malfunctioned [every time] by miscounting how [many] bags should go into a box. That day[,] the machine overloaded several boxes and sent them down the line to [Darby] causing her [carton-sealing] machine to be backed up [and] making her panic[,] which le[d] to her getting hurt. Maintenance was called in to fix the problem[,] and [Darby] was taken off the line.

Darby's Response at Ex. A. Darby's counsel attests she received the email from Aweau, but this is insufficient to convert the email into sworn, authenticated testimony.

In any event, Aweau fails to indicate any personal knowledge of the incident giving rise to Darby's claims. Inasmuch as Darby intends the email to support any allegation she was asked to work on a "defective machine[,]" Darby's Response at 6, Aweau states a separate bagging machine, rather than the carton-sealing machine, was malfunctioning. For all these reasons, the Court is unable to consider the email. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment.").

Additionally, IPC informed Darby the original machine was unavailable for inspection because McEntire "no longer has the machine in question . . . ." Darby's Response at Ex. B. Nonetheless, Darby's expert could have inspected a similar machine, like IPC's expert did, but evidently neglected to do so. This leaves as exclusive support for Darby's negligence and strict liability claims the allegations in the amended complaint, which are insufficient to demonstrate a genuine issue of material fact. *See Celotex*, 477 U.S. at 324 (explaining Rule 56(e) "requires the nonmoving party to go beyond the pleadings").

Further, IPC offers the following unrebutted expert opinions: (1) the carton-sealing machine contained four large warning labels specifically warning about the dangers of a moving machine; (2) the machine met or exceeded relevant regulations and industrial consensus standards; (3) the machine "did not contain any design defect[,]" "did not contain any manufacturing defects[,]" and was "extremely safe as designed"; (4) the machine was "properly assembled, properly maintained[,] and fully functional"; and (5) "while the exact cause [of the] jam (which precipitated the incident) is unknown, . . . jams are almost always caused by irregularities in the cardboard cartons[,]" which have "nothing to do with machine manufacture, assembly, design, or maintenance."  IPC's Motion at Ex. 5.

Considering these uncontroverted expert opinions and Darby's failure to produce any evidence in support of her negligence and strict liability claims, the Court determines IPC is entitled to summary judgment on those claims.  *See id.* at 322–23 (noting "a complete failure of proof concerning an essential element of the nonmoving party's case" entitles the moving party to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof").

> **B.    Whether the Court should grant summary judgment as to Darby's emotional distress and depression claim**

IPC next avers it is entitled to summary judgment on Darby's claim for emotional distress and depression because she has failed to establish the elements of either intentional or negligent infliction of emotional distress.  Darby wholly neglects to respond to this argument.

Because Darby is unable to constitute a bystander, the Court will construe her claim as one for intentional infliction of emotional distress.  *See K.S. ex rel. Seeger v. Richland Cnty. Sch. Dist. Two*, No. 2022-001408, 2025 WL 274844, at *2 (S.C. Jan. 23, 2025) ("The cause of action for the

7

negligent infliction of emotional distress is limited to the bystander context." (citing *Kinard v. Augusta Sash & Door Co.*, 286 S.C. 579, 582–83, 336 S.E.2d 465, 467 (1985))).

To establish a claim for intentional infliction of emotional distress under South Carolina law, a plaintiff must establish:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from [its] conduct; (2) the conduct was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community; (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was severe such that no reasonable man could be expected to endure it.

*Ford v. Hutson*, 276 S.C. 157, 163, 276 S.E.2d 776, 778 (1981) (internal quotation marks and citations omitted).

Darby contends IPC's "failure to exercise its duty of care caused [her] mental anguish and depression." Amended Complaint ¶ 45. But, as explained above, Darby fails to offer any evidence to rebut the expert opinion IPC complied with its duty of care and presumably intends to rely on the allegations in her amended complaint. Again, this is insufficient to demonstrate a genuine issue of material fact. *See Celotex*, 477 U.S. at 322–24 (explaining Rule 56(e) "requires the nonmoving party to go beyond the pleadings"). Accordingly, the Court concludes IPC is also entitled to summary judgment on Darby's claim for emotional distress and depression.

## V.    CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court IPC's motion for summary judgment is **GRANTED**, and Darby's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed this 31st day of March 2025, in Columbia, South Carolina.

                                                    s/ Mary Geiger Lewis
                                                  MARY GEIGER LEWIS
                                                  UNITED STATES DISTRICT JUDGE